## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN ROSS, | CASE NO. 1:13-cv-02142-GBC |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 9, 10, 11, 12 |

### I.      Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Lynn A. Ross for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). In concluding that Plaintiff could perform work in the national economy, the administrative law judge ("ALJ") ALJ assigned limited weight to opinions by Dr. Dennis Probst and great weight to a state agency physician's opinion. Plaintiff did not submit any treatment records from Dr. Probst or documentation of the objective findings indicated by Dr. Probst in his report, and Dr. Probst's opinions were internally inconsistent. The ALJ also found Plaintiff to be less than fully credible because she was able to care for her children, participate in a dart league, and submitted essentially no medical evidence for the period between May of 2010 and the ALJ's decision on December 12, 2011. Although Plaintiff asserts that the ALJ's assignment of weight to the medical opinions and credibility assessment were improper, the Court is bound by the deferential substantial evidence standard. If any reasonable mind could accept the evidence as adequate to support the ALJ's decision, the

decision must stand. Here, a reasonable mind could accept the evidence as adequate, so substantial evidence supports the ALJ's decision and the Court will affirm the decision of the Commissioner.

## II.      Procedural Background

On April 14, 2010, Plaintiff filed an application for SSI under Title XVI of the Act and for DIB under Title II of the Act. (Tr. 126-31). On July 13, 2010, the Bureau of Disability Determination denied these applications (Tr. 67-90), and Plaintiff filed a request for a hearing on September 13, 2010.  (Tr. 91-92). On September 8, 2011, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 36-61).  On December 12, 2011, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 20-35). On December 27, 2011, Plaintiff filed a request for review with the Appeals Council (Tr. 18-19), which the Appeals Council denied on June 14, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-7).

On August 13, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 19, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On December 23, 2013, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 11). On January 14, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). On April 29, 2014, the Court referred this case to the undersigned Magistrate Judge. Both parties consented to the referral of this case for adjudication to the undersigned on June 12, 2014, and an order referring the case to the undersigned for adjudication was entered on July 7, 2014. (Doc. 14, 15, 16).

## III.      Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. <u>Johnson v. Commissioner of Social Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. <u>See</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence." <u>Pierce v. Underwood</u>, 487 U.S. 552, 564 (1988). Substantial evidence requires only "more than a mere scintilla" of evidence, <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999), and may be less than a preponderance. <u>Jones</u>, 364 F.3d at 503. If a "reasonable mind might accept the relevant evidence as adequate" to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999); <u>Johnson</u>, 529 F.3d at 200.

### IV.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. See 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### V. Relevant Facts in the Record

Plaintiff was born on December 21, 1968 and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 34). She has at least a high school education and past relevant work as a factory worker, warehouse worker, and a service representative. (Tr. 29, 45).

Plaintiff presented to Dr. Hani J. Tuffaha, M.D. on October 1, 2008. (Tr. 231, 257-58). She reported that back and leg pain that began one year earlier, when she fell down the stairs, and that it had exacerbated in August of 2008 when she squatted down to pick something up. (Tr. 231). A lumbar MRI from July 31, 2008 was reviewed, which indicated a small herniated disc. (Tr. 232, 344). On November 28, 2008, a CT scan indicated a herniated disc at L5-S1 and grade 1 retrolisthesis. (Tr. 222, 235). On December 15, 2008, Plaintiff underwent a right L5-S1 laminectomy, foraminectomy, and disckectomy. (Tr. 222). Notes indicate that "[p]ostoperatively she did very well and stated "I feel great! Her leg pain was gone." (Tr. 222). She was discharged the next day. (Tr. 222). At a follow-up on December 26, 2008, she reported pain by her incision, but remained free of radicular pain and weakness and had increased her walking. (Tr. 249). "Her mechanical and neurological exams [were] satisfactory." (Tr. 249). Dr. Tuffaha "asked her to increase her activities further as tolerated." (Tr. 249).

On March 9, 2009, Plaintiff saw John R. Getz, Jr. PA-C, and Dr. James Young, M.D., her primary care physicians. (Tr. 298). She reported that she was doing well in general had no "complaints at this time." (Tr. 298). Her back exam was normal. (Tr. 298). On May 18, 2009, Plaintiff saw Dr. Young for a pap smear. (Tr. 297). There is no mention of back pain. (Tr. 297).

On September 23, 2009, Plaintiff reported to Mr. Getz that her back pain reappeared three or four months earlier. (Tr. 294). An MRI on September 29, 2009 revealed a small to moderate herniated disc and grade 1 retrolisthesis of L5 on S1. (Tr. 217). She presented to Dr. Tuffaha, on October 23, 2009, and reported pain that began about five months earlier. (Tr. 215). On October 27, 2009, Plaintiff underwent a right L5-S1 laminectomy, foraminectomy, and disckectomy with Dr. Tuffaha (Tr. 215). She was "asked to resume her diet and activities as

tolerated." (Tr. 215). By October 28, 2009, she was "doing very well," felt good, and her radicular leg pain had resolved. (Tr. 215, 374).

On November 9, 2009, Dr. Tuffaha evaluated Plaintiff. She had moderate limitation of range of motion at the waist and pain on straight leg raise, but she was "in general good condition." (Tr. 240). He continued her Mobic and ordered a new MRI. (Tr. 240).

On December 22, 2009, Plaintiff followed-up with Mr. Getz. (Tr. 291). He wrote that:

> She and her husband are asking for her to have 1 year off work for her back. I explained to both of them that I not only could not, but would not authorize this. This is something they need to discuss with the neurosurgeon…I explained that anything related to her back surgery NEEDS to come from the neurosurgeon.

(Tr. 291). Her back exam was normal and Mr. Getz indicated that she needed to contact Dr. Tuffaha with regard to her musculoskeletal pain. (Tr. 292).

On January 20, 2010, Dr. Tuffaha evaluated Plaintiff. (Tr. 239). He noted that her lumbar MRI from November 10, 2009 was "unremarkable with no evidence of recurrent or new [herniated discs] or any evidence of infection, etc." (Tr. 239, 242-43). He wrote that he "explained to [Plaintiff] that there is no indication for further neurosurgical management. I asked her to discontinue the Mobic and I have given her a prescription for Relafen. I have referred her to physical therapy for soothing modalities and stretching exercises." (Tr. 239).

On February 9, 2010, Plaintiff followed-up with Mr. Getz. (Tr. 289). She indicated that Dr. Tuffaha had referred her to physical therapy, but she had not gone yet. (Tr. 289). She had tenderness and a positive straight leg raise. (Tr. 290). He continued her medications and ordered an MRI. (Tr. 290). On May 3, 2010, Plaintiff followed-up with Mr. Getz. (Tr. 287). She reported that she did not get the MRI done because of insurance problems. (Tr. 287). She reported back pain with radiculopathy down her right leg and difficulty ambulating. (Tr. 287). She had a positive straight leg raise, some limitation of flexion, tenderness, and mild to moderate muscle

spasm. (Tr. 288). Mr. Getz ordered an MRI. However, there is no indication in the record that Plaintiff had the MRI at any point over the next year. The only subsequent medical record is an MRI from September of 2011.

Dr. Leo P. Potera, M.D., completed a Physical RFC assessment on July 13, 2010. (Tr. 360-65). He opined that she could occasionally lift up to twenty pounds and frequently lift ten pounds. (Tr. 361). He opined that she could stand at least two hours out of an eight-hour work day and sit for six hours out of an eight-hour work day. (Tr. 361). He opined that she was limited in her ability to use her lower extremities and should avoid repetitive use that could aggravate pain. (Tr. 361). He opined that she could never climb ropes or scaffolds but that she could occasionally climb ramps, stairs, ladders, balance, stoop, kneel, crouch, and crawl. (Tr. 362). He opined that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. 363). He explained that his opinion was based on the fact that Plaintiff reported "daily activities that are not significantly limited in relation to her alleged symptoms," had received appropriate treatment, and did not require an assistive device to ambulate. (Tr. 35).

On September 17, 2010, Plaintiff completed a Function Report. (Tr. 164). Plaintiff testified that she cares for her two minor children when her husband is not home. (Tr. 163). She indicated that she had no problems caring for her hair, feeding herself, and using the toilet, but that dressing herself was painful, she had a hard time washing her legs and feet and had a hard time bending to shave her legs. (Tr. 163). She reported that she prepares cereal, sandwiches, frozen dinners, and occasionally full course meals. (Tr. 164). She reported that she did not prepare full course meals as frequently because of pain upon standing for too long. (Tr. 164). She reported that she can dust, sweep, do laundry, and do dishes, but that she needed to take her pain

medication in able to do them and needed help carrying laundry. (Tr. 164). She reported that she goes outside three to four times per week and is able to walk, drive, and ride in a car. (Tr. 165). She reported that she was able to shop once a week in stores for about thirty minutes. (Tr. 165). She reported that her hobbies include making bracelets, reading, and playing in a dart league, but was no longer able to ride horses or dance. (Tr. 166). She reported that she interacts with people every day in person and over the phone. (Tr. 166). She reported she could not lift more than five pounds and that squatting, bending, standing, walking, sitting, kneeling, and stair climbing was painful. (Tr. 167). She reported that she can walk two or three blocks at a time before having to stop and rest for about fifteen or twenty minutes. (Tr. 167). She indicated that she does not use any devises, like braces, splints, or canes. (Tr. 168). She reported that she had "no problem" paying attention, could finish what she started, and could follow written and spoken instructions "very well." (Tr. 167). She reported that she experiences pain all day, every day unless she takes her pain medication. (Tr. 170). She indicated that her pain medication relieves her pain, but "sometimes" causes drowsiness or upsets her stomach. (Tr. 171).

Dr. Dennis Probst, D.O. completed a Multiple Impairment Questionnaire on September 2, 2011. (Tr. 381). He indicated that he had been treating Plaintiff since March of 2011, but none of his treatment records were submitted to the ALJ. (Tr. 381). He indicated diagnoses of chronic low back pain from degenerative disc disease, fibromyalgia, and depression, and opined that her prognosis was poor. (Tr. 381). He indicated that objective clinical findings included chronic muscle spasm and an MRI of the lumbar spine and also identified subjective symptoms of pain and tenderness. (Tr. 381). He opined that Plaintiff could only sit for four hours out of an eight hour work day and stand or walk for two hours out of an eight hour work day. (Tr. 383). He opined that she had to get up and move around every hour for thirty minutes. (Tr. 383-84). He

opined that she could occasionally lift up to twenty pounds and never lift more than twenty pounds. (Tr. 384). He opined that she could occasionally carry up to ten pounds and never carry more than ten pounds. (Tr. 394).

He opined that Plaintiff could not keep her neck in a constant position. (Tr. 385). He opined that she had minimal limitations in her ability to use fingers and hands for fine manipulations and was moderately limited in using her arms for reaching. (Tr. 385). Moderate limitations were defined as "Significantly limited but not completely precluded." (Tr. 385). He opined that she would need to take unscheduled breaks every thirty minutes and that her pain would frequently interfere with her attention and concentration. (Tr. 386). He opined that she would likely to be absent three or more times per month. (Tr. 387). He opined that Plaintiff could never push, pull, kneel, bend, or stoop. (Tr. 387). Even though Dr. Probst had only began treating Plaintiff on March 2, 2011,  he opined that her symptoms and limitations had been present since December of 2008. (Tr. 381, 387).

Plaintiff appeared and testified at the ALJ hearing on September 8, 2011. (Tr. 38). Plaintiff testified that her friend drove her to the hearing. (Tr. 42). She testified that her younger children lived with her husband, who was separated from her. (Tr. 42-43). She testified that she had tried to go back to work in August of 2010, but stopped because it was causing too much pain in her back. (Tr. 44). She testified that she had only paid child support during the three months she worked at Family Dollar. (Tr. 44). She had worked there for twenty-five to twenty-eight hours per week. (Tr. 47). She testified that she was unable to work because a herniated disc causes her pain in her lower back. (Tr. 47). She testified that she had received unemployment compensation for a eighteen months after she stopped working. (Tr. 46).  She testified that her doctors had limited her from lifting anything over ten pounds and bending at the waist. (Tr. 48).

She testified that her pain medication relieves her pain for about four hours at a time. (Tr. 48). She testified that she could get dressed and bathe herself, but that it was painful. (Tr. 49). She testified that she could cook small meals and wash dishes, but had to take breaks because she could not stand for long periods of time. (Tr. 49). She testified that she was not able to carry laundry or go shopping without help from her friend, but that she can dust and run a sweeper as long as she takes breaks. (Tr. 50). She testified that when her children stay with her every other weekend, they watch movies. (Tr. 50). She testified that when her children stay with her in the summer, they walk to where they can go swimming, and she wades around and plays with them. (Tr. 50). She testified that she goes out to eat twice a month and makes bracelets that she sells to friends. (Tr. 51). She testified that she goes to her adult daughter's house every other weekend when her younger children are staying with her. (Tr. 52).

A vocational expert also appeared and testified. The VE testified that, based on the RFC assessed by the ALJ described below, Plaintiff would be able to perform her past relevant work as a service representative. (Tr. 55). The VE testified that Plaintiff would also be able to perform other work in the national economy, such as a ticket taker, an inspector, and a hand packager. (Tr. 56). The VE also testified that, even if Plaintiff were limited to carrying ten pounds occasionally, and less than ten pounds frequently, she would be able to perform other work in the national economy, such as a surveillance monitor, bench assembler, and visual inspector. (Tr. 59). The VE testified that, if Plaintiff needed to lay down and nap for an hour a day as a result of medication side effects, there would be no work she could perform. (Tr. 59). The VE also testified that, if Plaintiff had to work three days or more of work as a result of pain, there would be no work she could perform. (Tr. 59).

On September 14, 2011, an MRI of Plaintiff's lumbar spine indicated degenerative and postoperative changes at L5-S1 and "relatively mild degenerative changes elsewhere in the lumbar spine." (Tr. 391). On October 21, 2011, Dr. Probst completed  a Lumbar Spine Impairment Questionnaire. (Tr. 398). He checked off every box under "positive clinical findings" except crepitance, including limited range of motion, tenderness, muscle spasm, swelling, abnormal gait, sensory left, reflex changes, muscle atrophy, muscle weakness, trigger points, and positive straight leg test, and also identified numbness in the left calf. (Tr. 393). He opined that she could only sit for two hours and stand or walk for one hour out of an eight hour day. (Tr. 394).

The ALJ issued a decision on December 12, 2011. At step one, the ALJ found that Plaintiff was insured through March 31, 2010 and had not engaged in substantial gainful activity since July 15, 2008. (Tr. 25). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine status post surgery and tobacco abuse were medically determinable and severe impairments. (Tr. 25). The ALJ found that Plaintiff's impairments did not meet or equal a Listing. (Tr. 26). The ALJ found that Plaintiff had the RFC to perform a range of light work, limited to lifting twenty pounds occasionally and ten pounds frequently, sit for six hours and stand or walk for four hours out of an eight-hour workday, avoid repetitive use of the lower extremities, occasionally climb ladders or stairs, balance, stoop, kneel, crouch, and crawl, never climb ropes or scaffolds, and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. (Tr. 26). At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 28). At step five, the ALJ found that Plaintiff could perform other work in the national economy in positions like a ticket taker, inspector, hand packager, surveillance

monitor, bench assembler, and visual inspector. (Tr. 30). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 31).

## VI.     Plaintiff Allegations of Error

### A.     The ALJ's assignment of limited weight to Dr. Probst's opinion

Plaintiff asserts that the ALJ erred in assigning great weight to Dr. Petora's opinion and little weight to Dr. Probst's opinion.  (Pl. Brief at 8-11). The ALJ noted that Dr. Petora was an "expert source" and that he had "considered the evidence of record." (Tr. 28). In contrast, Dr. Probst did not consider the evidence of record. The ALJ discounted Dr. Probst's opinion because it was internally inconsistent, noting that his opinions indicated different sitting and standing limitations. (Tr. 28). In contrast, the state agency opinion was "internally consistent and consistent with the evidence as a whole." (Tr. 28).  The ALJ also discounted Dr. Probst's opinion because there was no documentation of specific objective findings. (Tr. 28). The ALJ further discounted Dr. Probst's opinion because it contrasted with Plaintiff's stated activities of daily living. (Tr. 28). The ALJ earlier noted that Plaintiff "cares for her children, attends to her personal care needs, prepares meals, dusts, sweeps, does laundry, washes dishes, walks, drives, shops, pays bills, counts change, handles a savings account, uses a checkbook, reads, makes bracelets, and participates in a dart league." (Tr. 27).

Controlling weight may only be assigned when a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians

and opinions of examining physicians are given greater weight than opinions of non-examining physicians. Subsection 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."  Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

Plaintiff asserts that the ALJ erred in citing to a lack of objective findings because "Dr. Probst stated that his opinions were based on clinical and diagnostic evidence of chronic lumbar muscle spasms, pain, and multiple tender muscle points in the large muscle groups, as well as MRI findings." (Pl. Brief at 10). However, although Dr. Probst stated that his opinions were based on clinical and diagnostic findings, these clinical and diagnostic findings were not before the ALJ. As Plaintiff concedes, his treatment record may not be considered by the Court in determining whether the ALJ discounted his opinion for legitimate reasons. Dr. Probst's statement that there were objective findings differs from actual documentation of objective findings. There was no such documentation before the ALJ, so the ALJ properly discounted his opinion in this regard. 20 C.F.R § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

Plaintiff asserts that Dr. Probst's opinions were uncontradicted by other substantial evidence. However, they were contradicted by Dr. Petora's report, which was specifically identified by the ALJ. The Third Circuit rejected a similar argument in Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991):

> Jones next argues that the law of this Circuit required the ALJ to adopt the judgment of Jones's treating physicians, who opined that Jones's illnesses prevent him from maintaining gainful employment and cause him severe pain. Jones claims that the ALJ substituted the ALJ's own lay observations of Jones's condition for the findings of Jones's treating physicians, thus violating *Frankenfield v. Bowen,* 861 F.2d 405 (3d Cir.1988). In *Frankenfield,* we established that, in the absence of contradictory medical evidence, an ALJ in a social security disability case must accept the medical judgment of a treating physician.
>
> However, the opinions offered by Jones's treating physicians were conclusory and unsupported by the medical evidence, and failed to explain why ailments that had plagued Jones for decades did not incapacitate him until 1987. Further, these opinions were not uncontradicted. After Jones applied for reconsideration of the initial rejection of his claim, two physicians in the state agency evaluated the medical findings of Jones's treating physicians and concluded that those findings did not reveal any condition that would preclude gainful employment. In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's treating physicians were not controlling.

Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991)(citing Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir.1990) (rejecting a treating physician's opinion when it was not supported by the record and contradicted by claimant's ability to function adequately at a job); Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985) (consulting physician's opinion constituted sufficient conflict in the medical evidence for the ALJ to rely on a lack of clinical data to reject claimant's testimony and the opinion of her treating physicians).

Dr. Probst's opinion was also contradicted by the other record evidence identified by the ALJ. Dr. Probst opined that Plaintiff's limitations had been present since December of 2008, even though he only began treating her in March of 2011. However, the ALJ noted that after Plaintiff successfully completed surgery in December of 2008, she indicated that she was pain-

free until approximately May of 2009. The ALJ also noted that, after her back pain reemerged, she had another successful surgery and was discharged from Dr. Tuffaha's care in January of 2010 because there were no recurrent disc herniations and no need for additional neurosurgical management. The ALJ cited to the gap in the treatment record between May of 2010 and September of 2011, when an MRI indicated mostly mild degenerative changes. This evidence contradicts Dr. Probst's opinion. Dr. Probst's opinion was also contradicted by Plaintiff's reported activities of daily living. Plaintiff asserts that the ALJ erred in relying on Plaintiff's activities of daily living and mischaracterized her testimony. (Pl. Brief at 10). For instance, Plaintiff asserts that she can only complete "small meals." (Pl. Brief at 11). However, in Plaintiff's Function Report, she reported that she can complete full course meals. (Tr. 164). She asserts that she cannot do "much" with her children, but admits that she goes swimming with them. (Pl. Brief at 11). These contradict Dr. Probst's opinion that she could never push, pull, kneel, bend, or stoop. (Tr. 387).

Therefore, the ALJ properly relied on a lack of documentation to discount Dr. Probst's report. 20 C.F.R § 404.1527(c)(3). This also speaks to the nature and extent of the treating relationship, since there was no indication Dr. Probst would be able to " provide a detailed, longitudinal picture of your medical impairment(s) [or] bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). The ALJ also properly relied on medical and other evidence, including Dr. Petora's opinion, that contradicted Dr. Probst's opinion. 20 C.F.R § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Most importantly, Plaintiff does not challenge the ALJ's finding that Dr. Probst's opinions were internally inconsistent, while Dr. Petora's opinion was internally consistent. Id. Thus, while Plaintiff contends that the ALJ erred by failing to consider

the "examining relationship, the treatment relationship, supportability, consistency, and specialization," (Pl. Brief at 9), it is clear that the ALJ considered these factors, and that they weighed against Dr. Probst's opinion.[1] A reasonable mind could accept this evidence as adequate to discount Dr. Probst's opinion, so substantial evidence supports the ALJ's assignment of weight.

### B.      The ALJ's credibility assessment

Plaintiff asserts that the ALJ erred in assessing her credibility. When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7P.    When the Court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")).

---

[1] With regard to specialization, Plaintiff concedes that Dr. Probst a family practitioner. (Pl. Brief at 5, n. 5).

The ALJ rejected Plaintiff's credibility because the medical evidence and activities of daily living contradicted her testimony. As discussed above, these were accurate conclusions and are appropriate bases for rejecting Plaintiff's credibility. SR 96-7p. The Court notes that Plaintiff was able to work almost thirty hours per week at a Family Dollar for three months in 2010. (Tr. 47). Although Plaintiff testified that she had to stop working there because of back pain, there is no record of any treatment during or immediately after that time. Prior to that date, Plaintiff had been receiving unemployment from the State of Pennsylvania, which required her to certify that she was able to work. (Tr. 46). The ALJ did not explicitly cite these factors in her decision, but did elicit testimony regarding them at the hearing, and a Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 305 (3d Cir. 2013). The Court also notes that Plaintiff only started treating with Dr. Probst after her neurosurgeon and primary care physicians refused to place her on disability. (Tr. 239, 291, 381). A reasonable mind could accept this evidence as adequate to discount Plaintiff's credibility, so substantial evidence supports the credibility determination.

## C.     Additional medical records

Plaintiff submitted additional records from March 3, 2011 to December 7, 2011 to the Appeals Council that were not before the ALJ. (Tr. 5, 32- 35, 399-451). When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g), 42 U.S.C. ("Sentence Six"). Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Sentence Six requires a remand when evidence is "new" and "material," but only if the claimant demonstrated "good cause" for not having incorporated the evidence into the

administrative record. Id. In order to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. The relevant time period is "the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); Mathews v. Apfel, 239 F.3d at 592. The materiality standard also "requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).

The records that document events after the ALJ's hearing do not relate to the relevant period. They also create no reasonable likelihood that the ALJ would have decided differently. For instance, the ALJ pointed to the significantly greater sitting and standing limitations identified by Dr. Probst in his October 20, 2011 opinion as opposed to the September 2, 2011 opinion. However, the records submitted to the Appeals Council show that, at Plaintiff's only office visit between September 2, 2011 and October 20, 2011, Plaintiff reported "excellent relief" from her regimen and had "no radiation into the legs at all." (Tr. 401). Moreover, Dr. Probst identified many additional objective findings on October 20, 2011 than on September 2, 2011, like limited range of motion, tenderness, swelling, abnormal gait, sensory loss, reflex changes, muscle atrophy, muscle weakness, and a positive straight leg test, and also identified numbness in the left calf. (Tr. 393). None of these findings were documented at the September 23, 2011 visit, so there is no reason why Dr. Probst would have supported his opinion with them on October 20, 2011 and not September 2, 2011. (Tr. 401). Notes indicated complete relief after nerve block injections in November and December of 2011. (Tr. 437, 440, 445). Records during the relevant period show that she had been "doing more lifting lately with taking care of her

grandchild." (Tr. 407). The remaining records existed before the ALJ hearing, and Plaintiff had not identified any cause, much less good cause, for omitting them. (Tr. 403-423, 425-435). Thus, the Court did not consider these records in evaluating the ALJ's decision and will not remand pursuant to Sentence Six.

## VIII.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 26, 2014                   _____s/Gerald B. Cohn_____
                                            GERALD B. COHN
                                            UNITED STATES MAGISTRATE JUDGE